**E-FILED**
Wednesday, 01 June, 2016  03:36:39 PM
Clerk, U.S. District Court, ILCD

**IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

| | |
|---|---|
| PAUL HETMAN,<br> Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br> Defendant. | Case No. 1:15-cv-01199-JEH |

### Order and Opinion

Now before the Court is the Plaintiff Paul Hetman's Motion for Summary Judgment (Doc. 16), the Commissioner's Motion for Summary Affirmance (Doc. 21), and the Plaintiff's Reply (Doc. 23).  For the reasons stated herein, the Court GRANTS the Plaintiff's Motion for Summary Judgment, DENIES the Commissioner's Motion for Summary Affirmance, and REMANDS this matter for proceedings consistent with this opinion.[1]

### I

On June 19, 2012, Hetman filed an application for disability insurance benefits (DIB) alleging disability beginning on November 2, 2011.  His claim was denied initially on August 24, 2012 and was denied upon reconsideration on December 31, 2012.  On January 3, 2013, Hetman filed a request for hearing concerning his application for DIB.  A hearing was held before the Honorable Susan Sarsfield (ALJ) on November 7, 2013, and at that time Hetman was

---

[1] References to the pages within the Administrative Record will be identified by AR [page number].  The Administrative Record appears as (Doc. 12) on the docket.

accompanied by Marianne Dergham, an attorney,[2] and a Vocational Expert (VE) testified. Following the hearing, Hetman's claim was denied on January 21, 2014. His request for review by the Appeals Council was denied on March 16, 2015, making the ALJ's Decision the final decision of the Commissioner. Hetman filed the instant civil action seeking review of the ALJ's Decision on May 18, 2015.

## II

At the time he applied for DIB, Hetman was 50 years old living in Chenoa, Illinois. On his Form SSA-3368, Hetman indicated that the physical conditions that limited his ability to work included "Disc disor [sic], displa [sic] lumbar, arthopat multi [sic], spinal, thora [sic]; Disc Disorder; Displaced Lumbar; Arthropathy Multi Sites; Spinal Stenosis; and Thoracic Lumber [sic] Neuritis." AR 146. He reported that his conditions caused him pain or other symptoms. He also indicated on that form that he stopped working on November 2, 2011 due to his condition. On January 25, 2012, Hetman underwent lumbar surgery which included a posterior interbody fusion with a decompression hemilaminotomy at L5-S1 on the right and a separate decompression transfacetectomy decompression/hemilaminotomy on the left.

At the hearing before the ALJ on November 7, 2013, Hetman testified that he lived in his home with one son and was receiving disability temporarily through the VA and temporary long term disability through a private insurance company. Hetman explained that he consistently drove before November 2, 2011, and after that it was easy for him to find a ride from his brother, his son, or his friend. He testified that he previously worked in telephone collections and a as a field service technician.

---

[2] In her Decision, the ALJ provided that Hetman was represented by Rita Alboher and Marianne Dergham, both of whom were non-attorneys. However, the transcript indicates that Ms. Dergham is an attorney, and the Commissioner's Motion for Summary Affirmance states that Hetman was represented by an attorney at the hearing before the ALJ.

Hetman also testified that he felt that he could not work anymore because of his constant back pain which prevented him from concentrating and feeling comfortable. He stated that he had an appointment the week after the hearing to find out if there was anything the doctors could do for his continuing back issues, and he anticipated that he would be sent to Indianapolis (where he was sent previously for treatment) to meet with an orthopedic surgeon to find out if "they [could] fix it." AR 44. Hetman testified that his general practitioner told him that there was scar tissue pressing on the nerves in his back following his fusion surgery.

Hetman further testified that he had done physical therapy twice previously and planned to do it again the week following the hearing. He stated that he had MRIs taken, CT scans taken, and x-rays taken in the past. He also stated that he received three epidurals in 2013, after his surgery, which did nothing for him. Hetman next testified that he took gabapentin, hydrocodone, and naproxen for pain and took up to four hydrocodone pills per day. He explained that he hated taking the medication he was already prescribed, so he did not want to try anything else though his pain was reaching a point where he believed he would need to tell his doctor. He testified to drowsiness as a side effect of his pain medications.

In an attempt to control his back pain during episodes when it escalated to an 8 on a scale of 1 to 10 (about once every two weeks), Hetman testified that he would take two pain pills and would try to find a place to lay down for at least a couple of hours. He said the location of his pain was in the center of his back at the beltline and traveled out into both of his hips and then down both of his legs. He stated that sitting and standing were equally bad for him because both put pressure on his lower back, and he would be able to sit for only a half hour to 45 minutes at one time while still able to pay attention. After that, Hetman

3

explained that he would then go lay down if he were at home.  As for pain treatments, Hetman testified that he used a TENS unit daily and would leave it on continuously or until he would get tired of it.  He also put heat on his back in an attempt to alleviate the pain.  Hetman rated his back pain, on average, as a 5 or 6 with medication.  He added that if he could find a comfortable place to sit or lay down, his pain would possibly be a bit less, and then he rated his pain as a 6 to 7 on average generally.  Hetman described his back pain as both sharp and dull.

With regard to his daily activities, Hetman testified that he used the handicapped bathroom in his home to shower, and could cook quick meals and do his dishes because there were not many to do.  He testified that his son did most of the house work, but Hetman took care of his own room and bathroom and would work on those rooms until his back began to hurt and he would have to lay down.  He said that he would sometimes clean by sitting on the floor and "just kind of scoot around" to do it.  AR 52.  Hetman additionally testified that he could grocery shop for not much more than a half hour and then his pain would get to the point where he would have to leave the store.  He used a cart when grocery shopping and stated that he could not last long without one.  Hetman next testified that he began using a cane before his back surgery and used it for the first time after he fell down.  He stated that he had fallen since his surgery.

When asked by the ALJ whether he would be able to go back to his previous work as a collections person, Hetman testified that there was no way he would be able to do so because of his back pain and the option to stand up during the day would not relieve his back pain.

Upon examination by his attorney, Hetman testified that he could concentrate on the TV shows he watched if he were laying down because if he were sitting or standing for a long time, the pain would get to a certain point

4

where it would be hard for him to concentrate.  He stated that he laid down for most of the day on a daily basis.  He then testified that he no longer engaged in his previous hobbies of hunting and fishing, and the last time Hetman did yard work was before his back became worse.

Finally, the ALJ elicited testimony from the VE.

### III

In her January 21, 2014 Decision, the ALJ determined that Hetman had the following severe impairments:  degenerative disc disease, cardiomyopathy, and obesity.  The ALJ then made the following Residual Functional Capacity (RFC) finding:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can never climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs, and can occasionally balance, stoop, kneel, crouch and crawl.

AR 21.  In reaching that finding, the ALJ explained that Hetman's statements concerning the intensity, persistence, and limiting effects of his alleged symptoms were not entirely credible for the reasons explained in the Decision. The ALJ then went on to discuss Hetman's obesity, noting that the possible effects of obesity on a person with impairments such as Hetman's at the various sequential steps were taken into consideration to reach her conclusions.  The ALJ stated that no treating or examining medical source had specifically attributed additional or cumulative limitations to Hetman's obesity and that the medically determinable evidence supported her RFC finding.  The ALJ next stated that Hetman's degenerative back disorder and cardiomyopathy had been established as severe impairments by the objective medical record.

The ALJ next identified the evidence of record pertaining to Hetman's lower back issues as of November 2011, including evidence of decreased range of motion in the lumbar spine with strength and gait that remained normal. The ALJ discussed the results of testing done of Hetman's back between November 2011 and March 2013 via MRI, CT scan, x-ray, and physical examination. The ALJ identified Hetman's treatment records dated after his January 2012 back surgery and specifically noted where his treatment records indicated how he ambulated and whether he used an assistive device to do so. The ALJ also repeated Hetman's reports to his doctors regarding his pain and where he continued to feel numbness after his surgery. The ALJ also noted that Hetman participated in physical therapy and increased his activity status post-surgery.

The ALJ observed, "[E]xcept for limited range of motion in the lumbar spine, the claimant's physical examinations demonstrated mild symptomology." AR 23. She went on, "The claimant's gait was slow and mildly antalgic and his straight leg raise test (SLR) was negative in September, and his SLR was only mildly positive in November of 2012." AR 23. The ALJ then noted that Hetman tried epidural injections and physical therapy in the summer and fall of 2012 and injections again in the summer of 2013, all of which reportedly brought him no relief for his back pain. Medical records indicated limited range of lumbar motion in May 2013 and then very poor range of lumbar motion in all planes by August 2013. The ALJ discussed the medical notes that indicated Hetman used a cane for support, though he was observed to be steady as he performed exam maneuvers. She noted Hetman's diagnosis of chronic back pain related to lumbar facet osteoarthritis, lumbar radiculopathy, and a deconditioned back and that he was recommended for physical therapy and also for conservative use of opiates, if used at all.

6

The ALJ next discussed the State's Department of Disability Services (DDS) physicians' and evaluators' opinions which provided that Hetman was capable of light exertional work.  The ALJ gave those opinions "significant weight" after finding that "the DDS assessments [were] consistent with the objective record." AR 24.  Next, the ALJ – repeatedly referencing the objective medical evidence – stated her conclusion that Hetman's allegation of complete and total disability could not be fully accepted.  The ALJ articulated that, in assessing Hetman's RFC, she determined that "the degree of symptoms and limitations alleged by the claimant due to pain [were] not consistent with the objective medical evidence regarding [his] impairments, as discussed at length above [in the Decision]."   AR 24.  The ALJ then briefly referenced Hetman's most recent (August 2013) examination notes which indicated he was independent in activities of daily living, as he told his pain clinic doctor that he frequently rode around in the car with his brother and that he wanted to try to ride his bicycle for exercise.

Lastly, the ALJ addressed the VE's testimony and explained why she determined that Hetman was capable of performing his past relevant work as a collection clerk.

## IV

Hetman argues that the ALJ erred by:  1) improperly assessing Hetman's credibility; and 2) improperly assessing Hetman's RFC.

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the

Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971), *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. *See* 20 C.F.R. § 404.1566 (1986). The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. *See* 20 C.F.R. § 404.1520. In the following order, the ALJ must evaluate whether the claimant:

1) currently performs or, during the relevant time period, did perform any substantial gainful activity;

2) suffers from an impairment that is severe or whether a combination of her impairments is severe;

3)      suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

4)      is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and

5)      is unable to perform any other work existing in significant numbers in the national economy.

*Id*. An affirmative answer at any step leads either to the next step of the test, or at steps 3 and 5, to a finding that the plaintiff is disabled. A negative answer at any point, other than at step 3, stops the inquiry and leads to a determination that the plaintiff is not disabled. *Garfield v. Schweiker*, 732 F.2d 605 (7th Cir. 1984).

The plaintiff has the burdens of production and persuasion on steps 1 through 4. However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. *Tom v. Heckler*, 779 F.2d 1250 (7th Cir. 1985); *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984).

In the instant case, Hetman claims error on the ALJ's part at Step Four.

## A

Hetman first argues that the ALJ erred in failing to articulate her assessment of the credibility of his allegations with a level of detail that permitted meaningful judicial review.  Hetman argues that discrete parts of the ALJ's Decision fell short of the ALJ's duty to assess his credibility including the failure to analyze his pain pursuant to SSR 96-7p, the failure to consider his use of a cane, and the failure to consider the full scope of his activities of daily living. The Commissioner counters that the ALJ's Decision did not rely on mere boilerplate, and instead reflects that she considered multiple factors in assessing the credibility of Hetman's subjective complaints and explained the basis for her

9

adverse credibility finding.  The Commissioner further argues that Hetman fails to appreciate that RFC determinations are inherently intertwined with matters of credibility, and so the ALJ's RFC finding of a reduced range of light work made clear how the ALJ credited Hetman's allegations of disability.  In his Reply, Hetman argues that an ALJ may not imply her analysis of a claimant's credibility in her decision and an ALJ may not rely on a lack of objective evidence to discredit the claimant.

Determinations of credibility made by the ALJ will not be overturned unless the findings are patently wrong.  *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012).  SSR 96–7p instructs that when "determining the credibility of the individual's statements, the adjudicator must consider the entire case record," and that a credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record."  An ALJ must provide "enough detail and clarity to permit meaningful review."  An ALJ should consider elements such as objective medical evidence of the claimant's impairments, the daily activities, allegations of pain and other aggravating factors, "functional limitations," and treatment (including medication).  *Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004); *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004).  A credibility finding "must be supported by the evidence and must be specific enough to enable the claimant and a reviewing body to understand the reasoning." *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008).

Here, although the ALJ did not fail to provide enough clarity to permit meaningful review of her assessment of Hetman's credibility by the Court, the clarity the ALJ provided reveals that the ALJ failed to consider the necessary factors and thus, committed legal error.  *See Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (explaining that the Commissioner's findings will be reversed only if

they are not supported by substantial evidence or if the Commissioner applied an erroneous legal standard).  SSR 96-7p states in relevant part:

> In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 CFR 404.1529(c) and 416.929(c) describe the kinds of evidence, including the factors below, that the adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements:
> 1. The individual's daily activities;
> 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
> 3. Factors that precipitate and aggravate the symptoms;
> 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
> 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
> 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
> 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

Here, the ALJ concluded that "the claimant's allegation of complete and total disability cannot be fully accepted."  AR 24.  The ALJ then went on to discuss how the *objective* medical evidence contradicted Hetman's allegations of disability where:  the record did not demonstrate clearly that he had the muscle spasms, muscle atrophy, motor weakness, sensation loss, difficulty ambulating, or reflect abnormalities which are associated with intense and disabling pain; the clinical evidence persistently demonstrated that Hetman's strength was always intact everywhere and he always had full-range of motion in his extremities; the examinations Hetman underwent showed no apparent distress; and the objective

medical evidence demonstrated a good result from surgery with an ample recovery and virtually no change in his condition to support the alleged increase in pain and symptoms after August 2012.  AR 24.  The ALJ also stated, "The mild, post-surgical changes reflected in the July 30, 2012 CT scan and the March 25, 2013 MRI of the lumbar spine underscore the lack of objective medical evidence to support that his lumbar spine condition is disabling."  AR 24.

It is clear that the ALJ placed an undue amount of weight on the lack of objective medical evidence to support Hetman's allegations of disability. Missing from her assessment was a consideration of aggravating factors, treatment Hetman received for his back pain, and functional limitations Hetman experienced.  With regard to any functional limitations caused by pain, the ALJ noted that the evidence showed that Hetman consistently used a cane to ambulate after November 2012, but she then rejected such evidence because there was no prescription for it or suggestion for such by any of his doctors. Once again, the ALJ's discussion reveals that she rejected Hetman's use of a cane (and therefore another indication of his alleged pain) because identifiable medical evidence did not indicate his need for one.  With regard to the treatment Hetman sought for his back pain, the ALJ only recited the treatment he received and the results.  The ALJ entirely failed to note, however, that Hetman testified to taking hydrocodone, gabapentin, and naproxen pain medications.  The ALJ did not, as Hetman argues, explain *how* she considered the treatments Hetman received or *why* the consistent receipt of treatments failed to make Hetman's allegations of debilitating pain more rather than less credible.  In other words, the ALJ did not minimally articulate her reasons for rejecting evidence of Hetman's ongoing pain.  *See Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir. 1992) ("The ALJ must minimally articulate [her] reasons for crediting or rejecting evidence of disability").

To the extent that the ALJ was convinced that Hetman was incredible regarding his pain and limitations due to his back impairment because objective medical evidence was lacking to support his allegations, the Seventh Circuit has made clear that, "An ALJ may not discount a claimant's credibility just because [his] claims of pain are unsupported by significant physical and diagnostic examination results." *Pierce v. Colvin*, 739 F.3d 1046, 1049-50 (7th Cir. 2014). The glimpse into her reasoning that the ALJ provided shows that she improperly assessed Hetman's credibility by not sufficiently addressing the factors under SSR 96-7p and to the extent she did address the relevant factors, she rejected them merely because the objective evidence fell short. In fact, the ALJ's discussion of Hetman's testimony at the hearing was essentially non-existent in her Decision. Hetman's hearing testimony notably post-dated the August 2013 medical records which the ALJ specifically cited for the reports that Hetman was "independent in activities of daily living" and "frequently rode around in the car with his brother." AR 25. Hetman's testimony provided more detail about his activities of daily living, his pain, and his attempts to alleviate his pain (testimony that went directly to the factors the ALJ was required to consider under SSR 96-7p). Still, the ALJ provided no discussion of how she perceived Hetman's reports during treatment in light of his elaboration during the hearing. Moreover, the ALJ included no discussion of why the later-dated medical evidence which *did* include more definitive *objective* signs of limitations directly related to his back condition were insufficient.

The ALJ's over-reliance upon the *lack* of objective medical evidence to substantiate Hetman's pain allegations is even more suspect in light of the weight she gave the State's DDS physicians' and evaluators' assessments. She gave those evaluators' assessments "significant weight." AR 24. Yet those two separate evaluators indicated "Yes" to the question of whether "the individual's

statements about the intensity, persistence, and functionally limiting effects of the symptoms [were] substantiated by the objective medical evidence alone[.]" AR 69, 78. The ALJ included no discussion as to the discrepancy in her Decision between giving "significant weight" to the evaluators' assessments and finding Hetman's allegations less than credible based upon a lack of objective medical evidence. In this regard, the ALJ's credibility discussion is at odds with the statement in SSR 96-7p that:

> [I]f the case record includes a finding by a State agency medical or psychological consultant or other program physician or psychologist on the credibility of the individual's statements about the limitations or restrictions due to symptoms, the adjudicator at the administrative law judge . . . level of administrative review must consider and weigh this opinion of a nonexamining source under the applicable rules in 20 CFR 404.1527 and 416.927 and must explain the weight given to the opinion in the decision.

SSR 96-7p, 1996 WL 374186, at *8. Thus, the ALJ failed to build a logical bridge between the evidence and her conclusions. See *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

The errors this ALJ committed in assessing Hetman's credibility compel remand.

## B

Because the Court has determined that the ALJ's credibility assessment was legally erroneous which alone necessitates remand, the Court will not address Hetman's second argument that the ALJ improperly assessed his RFC. Nevertheless, the ALJ must necessarily re-visit her RFC finding to ensure that it is compatible with her analysis of Hetman's credibility on remand.

## V

For the foregoing reasons, the Plaintiff's Motion for Summary Judgment (Doc. 16) is GRANTED, the Defendant's Motion for Summary Affirmance (Doc.

21) is DENIED, and this matter is REMANDED pursuant to Sentence Four of 42 U.S.C. § 405(g) for the ALJ to properly assess the Plaintiff's credibility pursuant to the relevant authority.

*It is so ordered.*

Entered on June 1, 2016.

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE

15